Commonwealth *v.* Geuss et al., Appellants.

Argued September 27, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Hayden C. Covington,* with him *Harold Mayberry,* for appellants.

*Edwin L. Kohler,* City Solicitor, with him *Joseph B. Walker,* Assistant City Solicitor, *Kenneth H. Koch,* District Attorney and *Ray R. Brennen,* Assistant District Attorney, for appellee.

OPINION BY DITHRICH, J., November 14, 1950:

This appeal involves the validity of an ordinance of the City of Allentown regulating the use of sound trucks. The ordinance defines a sound truck as "any motor vehicle . . . having mounted thereon, or attached thereto, any sound amplifying equipment." It is drawn in conformity with the model ordinance, regulating and prohibiting certain uses of sound trucks, adopted by the National Institute of Municipal Law Officers, hereinafter referred to as NIMLO (Report No. 123, 1948).

The principal question to be determined is whether the ordinance bears a substantial relation to the

health, safety, morals or general welfare of the people as a whole, as contended for by the City, or is arbitrary, unreasonable and capricious, constituting a denial of due process, as contended for by defendants.

The guiding principle in determining the question was admirably stated by Mr. Justice ROBERTS in *Cantwell v. Connecticut*, 310 U. S. 296, 84 L. Ed. 1213. Speaking for the Supreme Court of the United States, he said, page 308: "When clear and present danger of riot, disorder, *interference with traffic upon the public streets*, or other immediate threat to *public safety*, peace, or order, appears, the power of the State to prevent or punish is obvious." (Italics supplied.)

The appellee takes the position that in the downtown business district of Allentown, as in every city, the "clear and present danger of . . . interference with traffic" and the "clear and present danger of accident" *always* exist. The learned judge of the court below upheld the position taken by the City and said: "As we conceive the purpose of the ordinance, at least so far as the ban on the use of sound trucks on busy streets is concerned, it was rather enacted as a safety measure than merely to protect the citizens from annoyance or to protect their right of privacy."

NIMLO is authority for the statement that municipalities everywhere are seeking actively a solution to the difficult problem which will safeguard freedom of thought and at the same time not unreasonably interfere with freedom of speech. In view of the widespread interest in the question, a brief resume of two vitally important five to four decisions of the United States Supreme Court may be helpful at this point.

*Saia v. New York*, 334 U. S. 558, 92 L. Ed. 1574, the first of the two cases, was decided June 7, 1948. Mr. Justice DOUGLAS in the opening sentence of the majority opinion of the Court said: "This case presents the question of the validity under the Fourteenth

Amendment of a penal ordinance of the City of Lockport, New York, which forbids the use of sound amplification devices except with permission of the Chief of Police." Because the ordinance established a previous restraint in the discretion of the Chief of Police, without any standards prescribed for the exercise of his discretion, the ordinance was held to be unconstitutional on its face.

In *Kovacs v. Cooper*, 336 U. S. 77, 93 L. Ed. 513, decided January 31, 1949, an ordinance of Trenton, New Jersey, which forbids the use or operation on the public streets of a "sound truck" or of any instrument which emits "loud and raucous noises" and is attached to a vehicle on public streets, was held not to infringe the right of free speech in violation of the First Amendment of the Constitution of the United States made applicable to the states by the Fourteenth Amendment. Mr. Justice REED announced the judgment of the Court and an opinion in which the Chief Justice and Mr. Justice BURTON joined. There was no majority opinion. Separate concurring opinions were written by Justices FRANKFURTER and JACKSON. In the Court opinion, Mr. Justice REED said, pages 81, 82: "The use of sound trucks and other peripatetic or stationary broadcasting devices for advertising, for religious exercises and for discussion of issues or controversies has brought forth numerous municipal ordinances. The avowed and obvious purpose of these ordinances is to prohibit or minimize such sounds on or near the streets since some citizens find the noise objectionable and to some degree an interference with the business or social activities in which they are engaged or the quiet that they would like to enjoy. A satisfactory adjustment of the conflicting interests is difficult as those who desire to broadcast can hardly acquiesce in a requirement to modulate their sounds to a pitch that would not rise above other street noises nor would they deem a re-

striction to sparsely used localities or to hours after work and before sleep—say 6 to 9 p.m.—sufficient for the exercise of their claimed privilege. . . . *Unrestrained use throughout a municipality of all sound amplifying devices would be intolerable.* [Italics supplied.] Absolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities." (The sentence last quoted is as it appears in the bound volume, 336 U. S. Reports at pages 81, 82, without the omission of the words "undesirable and probably" between the words "is" and "unconstitutional" as quoted in appellants' brief.)

The opinion continued, page 87: "City streets are recognized as a normal place for the exchange of ideas by speech or paper. But this does not mean the freedom is beyond all control. We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities. On the business streets of cities like Trenton, with its more than 125,000 people [Allentown has a population of approximately 100,000], such distractions would be dangerous to traffic at all hours useful for the dissemination of information, and in the residential thoroughfares the quiet and tranquillity so desirable for city dwellers would likewise be at the mercy of advocates of particular religious, social or political persuasions. We cannot believe that rights of free speech compel a municipality to allow such mechanical voice amplification on any of its streets."

In that case Justices FRANKFURTER and JACKSON, who wrote separate dissenting opinions in the *Saia* case, wrote separate concurring opinions, Mr. Justice JACKSON stating in conclusion: "I concur in the present result only for the reasons stated in dissent in Saia

v. New York, 334 U. S. 558, 566." Mr. Justice BLACK wrote a dissenting opinion in which Justices DOUGLAS and RUTLEDGE concurred. It is interesting to note that the same Justices who were in the majority in the *Saia* case are in the minority in the *Kovacs* case, with the exception of Mr. Chief Justice VINSON, who is in the majority in the latter case.

Out of the welter of concurring and dissenting opinions in these two cases—three in the *Saia* case; five in the *Kovacs* case—we agree with the learned judge of the court below that: "The Kovacs case clearly permits restriction as to time and place of use of sound trucks on city streets. Even the Saia case recognized 'The hours and place of public discussion can be controlled.' The use of the two words 'hours and place' implies that there may be an absolute prohibition at certain hours and at certain places. It does not mean that there must be permissible hours at every place. . . .

"The City of Allentown is not depriving defendants of the use of any street for propaganda purposes. It is simply denying them the use of its very busiest streets for propaganda by sound truck."

In the instant case both sides agree that the facts have been succinctly and accurately stated by the trial court in its opinion. A summary of the facts as found by Judge DIEFENDERFER is as follows. Paul Geuss and Erich Fleischmann, appellants, are members of the Allentown Company of Jehovah's Witnesses, a company affiliated with the Watch Tower Bible and Tract Society of 117 Adams Street, New York City. Fleischmann is presiding minister of the Allentown Company, a band of 120 members, with headquarters at 1335 Chew Street, Allentown. On Sunday, May 15, 1949, the Allentown Company had scheduled an address at its headquarters by one C. Marks. To advertise the meeting the Company on the preceding Saturday organized its members into several groups: (a) "sandwich" men with

large placards announcing the meeting and handing out printed placards; (b) members distributing Watch Tower publications; and (c) a cruising automobile equipped with an electric amplifier system operated by appellants.

In the late afternoon or early evening of Saturday, May 14, as the automobile was approaching Center Square, the intersection of Allentown's two main thoroughfares, appellant Fleischmann broadcast through the microphone and amplifier one of his prepared statements. Appellants were then placed under arrest. The violation of the ordinance was deliberate in order to test its validity. Appellants registered the automobile with its equipment and complied with all provisions of the ordinance, except that forbidding the use of such equipment on certain streets, including the intersection aforesaid. The ordinance provides in part: "No sound truck with its amplifying device in operation shall be operated on the following streets between the points designated . . ." Every street on which the use of amplifiers is forbidden is a street bearing heavy traffic at every hour of the day and well into the night, and except for two through highway streets is occupied almost exclusively by business. Hamilton Street, on which appellants were operating, is Allentown's main street running east and west, and at the particular location where the violation occurred it is crossed by Seventh Street, the main street running north and south. Traffic at this intersection is especially heavy on a Saturday afternoon.

In the opinion of Judge DIEFENDERFER, "The law of this case is comparatively simple." He then quotes the following from *Kovacs v. Cooper*, supra, pages 85, 86: " 'All regulatory enactments are prohibitory so far as their restrictions are concerned, and the prohibition of this ordinance as to a use of streets is merely regulatory. Sound trucks may be utilized in places

such as parks or other open spaces off the streets. The constitutionality of the challenged ordinance as violative of appellant's right of free speech does not depend upon so narrow an issue as to whether its provisions are cast in the words of prohibition or regulation. The question is whether or not there is a real abridgment of the rights of free speech. Of course, even the fundamental rights of the Bill of Rights are not absolute. The Saia case recognized that in this field by stating "The hours and place of public discussion can be controlled".' "

The lower court continued: "One must not overlook the fact that the city did not forbid advertisement of the meeting or the spread of religious propaganda at the very point where it forbade the use of sound trucks. Defendants' company was permitted to have sandwich men on the sidewalks, where only congestion and not danger resulted. They were permitted to distribute leaflets announcing the meeting and the city patiently assumed the task of gathering the resultant litter. They were permitted to solicit readers or subscribers for the magazines. It seems unreasonable to suppose that anyone who could be persuaded to attend the meeting would do so on the basis of a broadcast rather than from a tangible and permanent printed invitation thrust into his hand or from reading a placard. *Saving souls is undoubtedly more important than saving lives, but when both can be accomplished by reasonable cooperation, a zealous Christian should be the first to offer such cooperation.*" (Italics supplied.)

In the dissenting opinion by Mr. Justice BLACK in the *Kovacs* case, he said, page 104: "I would agree without reservation to the sentiment that 'unrestrained use throughout a municipality of all sound amplifying devices would be intolerable.' And of course cities may restrict or absolutely ban the use of amplifiers on busy streets in the business area. A city ordinance that rea-

sonably restricts the volume of sound, or the hours during which an amplifier may be used, does not, in my mind, infringe the constitutionally protected area of free speech. It is because this ordinance does none of these things, but is instead an absolute prohibition of all uses of an amplifier on any of the streets of Trenton at any time that I must dissent."

In our opinion the Allentown ordinance is a reasonable regulation as to place. Appellants do not question the reasonableness of the City in the selection of streets where sound trucks are not permitted to be operated. Their objection is that no right of selection exists. On this point the great weight of authority is clearly against them. An ordinance which removes a percentage of the streets of a city from the operation of sound trucks and amplifying devices and is directed solely at the traffic interference caused by them and the resultant hazards to life is a regulation for a proper safety reason and not an abridgment of the right of free speech. There is no absolute right of free speech with sound trucks or other amplifying devices on city streets, as urged upon us by appellants. The right is subject to curtailment on "busy streets in the business area."

If we were to uphold the contention of appellants it would be tantamount to ruling that a sound truck or other amplifying device may be added to each individual's right of freedom of speech. The result would indeed be intolerable. It is daily becoming more difficult for a person to concentrate on his work in a downtown office building because of the noises apparently necessary and incidental to the conduct of affairs in the life of a modern city. And if the councilmanic bodies of the municipalities are not to be permitted to prohibit the operation of sound trucks and the blare of this ultramodern means of communication on certain streets or in certain areas, then there will no longer be any authority lodged anywhere to safeguard, in the

words of Mr. Justice FRANKFURTER in the *Kovacs* case, page 97, "the steadily narrowing opportunities for serenity and reflection"; and we may add "the steadily narrowing opportunities" to keep the streets open and available for safe movement of people and property, the primary purpose to which streets are dedicated. *Schneider v. State*, 308 U. S. 147, 84 L. Ed. 155.

When the *Kovacs* case was before the New Jersey Supreme Court (135 N. J. L. 64, 50 A. 2d 451), the Court put the case for the regulation of sound trucks and amplifying devices very patly when. it said, page 68 of 135 N. J. L. and page 453 of 50 A. 2d: "The freedom to express one's opinions and to invite others to assemble to hear those opinions does not contain the right to compel others to listen. The means of expression through a sound amplifier is tantamount to compulsion. The booming voice of a speaker in crowded thoroughfares of the city forcibly attracts the attention of almost all within a wide area. That alleged right was never intended to be guaranteed by either [United States or New Jersey] Constitution," nor, may we add, by the Constitution of Pennsylvania. Since the ordinance in question bears a substantial relation to the health, safety and general welfare of the people as a whole and is not arbitrary, unreasonable and capricious, thus constituting a denial of due process under the Fourteenth Amendment of the Constitution of the United States, we agree with the learned judge of the court below that it is "a valid exercise of the police power of the City of Allentown, [and] that it does not unreasonably interfere with defendants' right of free speech or the free exercise. of their religion."

Freedom of speech on the business streets between the points designated is not prohibited. It is only the amplification of such speech by the means of sound trucks at which the ordinance is aimed. As a safety measure, and there can be no reasonable doubt that

that is the purpose for which the ordinance was enacted, its validity cannot be successfully challenged.

Judgment affirmed.